UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WHITE HOUSE/BLACK MARKET, INC.
and CHICO'S FAS, INC.,

                    Plaintiffs,

      v.

CACHE INC., RABIA FARHANG, and
CHRISTINE BROAD,

                    Defendants.

**ECF CASE**

10 Civ. 5266 (PGG)

**MEMORANDUM OPINION & ORDER**

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiffs White House/Black Market, Inc. and Chico's FAS, Inc. bring this action against Defendants Cache Inc., Rabia Farhang and Christine Broad asserting claims arising from Defendants' alleged misappropriation of trade secrets and confidential information relating to White House/Black Market's retail business selling women's apparel and accessories.

        Plaintiffs move to remand this action to state court pursuant to 28 U.S.C. § 1447. For the reasons set forth below, Plaintiffs' motion to remand will be GRANTED.

## BACKGROUND

        White House/Black Market ("WHBM"), which was acquired by Chico's in 2003, operates 337 retail stores and 17 outlet stores, along with an e-commerce website, selling "fashionable clothing and accessory items" catering to "women 25 years of age and over with a moderate to high income level." (FAC ¶¶ 28-29) Cache is a direct competitor of WHBM. (FAC ¶ 1)

        The Amended Complaint alleges that Defendants Farhang and Broad are "close professional colleagues as well as social friends." (FAC ¶ 36) Farhang was employed by WHBM from 1997 through October 2009. (FAC ¶ 34) At the time of her departure from

WHBM, Farhang served as Vice President and General Merchandise Manager and functioned as Divisional Merchandise Manager.  (Id.)  Board was employed by WHBM from 1998 through November 2009, leaving WHBM as Merchant of Sweaters.  (FAC ¶ 35)  Both Farhang and Board are currently employed by Cache.  (FAC ¶¶ 21-22)

As employees of WHBM, both Farhang and Board executed non-disclosure agreements and signed acknowledgements that they would abide by Chico's Code of Ethics and Chico's HQ Associate Handbook.  (FAC ¶¶ 58-62)

Farhang and Board are alleged to have been "intimately involved in the conceptualization and development of WHBM's 2010 Spring, Summer and Fall season lines."  (FAC ¶ 44)

The Amended Complaint alleges that Cache, in light of "its poor performance," undertook to "emulate its successful competitor, WHBM."  (FAC ¶ 73)  A critical component of that effort was hiring Farhang and Board away from WHBM.  (FAC ¶¶ 75, 83)  Defendant Board allegedly printed confidential documents proprietary to WHBM days before her departure, including documents disclosing the Company's marketing plans, sales strategy, shipping and release dates for its clothing lines, suppliers, sales forecasts, costs and profit margins, operational calendars, and information about trends used in formulating upcoming clothing lines.  (FAC ¶¶ 82, 84)

After Farhang and Board's arrival, Cache released, at what the Amended Complaint terms "unprecedented speed," a Spring 2010 line including garments that "are identical or virtually identical to products designed by WHBM while Farhang and Board were employed by WHBM."  (FAC ¶ 89)  These garments utilized color palettes and prints similar or identical to those planned for WHBM's lines.  (FAC ¶¶ 93-94)

Cache's Summer 2010 line allegedly utilized WHBM's trade secrets "to a much more extensive and sophisticated level . . . made possible by the longer lead time for Defendants Farhang and Board to take advantage of the trade secret materials they brought over to Cache." (FAC ¶ 96)  The Amended Complaint alleges that Cache's Summer 2010 line appropriated the color palette and design themes WHBM had adopted for the same season and lists several garments in Cache's Summer 2010 line alleged to be "identical or nearly identical" to those designed by WHBM.  (FAC ¶¶ 98, 99)

The Amended Complaint avers that the "commonalities between WHBM's Spring and Summer 2010 product lines, and Cache's Spring and Summer 2010 product lines, [are] sufficient to suggest that Farhang and Board disclosed WHBM's trade secret information concerning the design, and timing of delivery, of WHBM's Spring and Summer products." (FAC ¶ 107)  Cache's alleged use of WHBM's trade secrets has resulted in improved sales. (FAC ¶¶ 110-11)

Plaintiffs bring claims for breach of contract (FAC ¶¶ 120-138), tortious interference with contractual relations (FAC ¶¶ 139-143), misappropriation of trade secrets (FAC ¶¶ 144-147), breach of fiduciary duty (FAC ¶¶ 148-157), and civil conspiracy (FAC ¶¶ 158-162). Plaintiffs seek, inter alia, an injunction preventing Cache from designing, manufacturing, marketing and selling garments in Cache's Spring, Summer and Fall 2010 lines, or any seasonal line released thereafter, derived from Plaintiffs' confidential, proprietary or trade secret information and ordering a recall of any garments produced using this information.  (FAC Prayer for Relief)

WHBM filed this action in the Supreme Court of the State of New York, New York County, on June 29, 2010, where it was assigned to Justice Kapnick of that court's Commercial Division.  (Notice of Removal, Ex. A, L) (Dkt. No. 1)

On July 1, 2010, Justice Kapnick heard oral argument on Plaintiff's request for a temporary restraining order and an order granting expedited discovery.  (Notice of Removal, Ex. L)  WHBM argued that expedited discovery and a hearing on its requested injunctive relief were necessary in light of the fact that Cache's Fall 2010 line – which WHBM alleges is likely to be based on information misappropriated by Farhang and Board – is expected to arrive in retail stores at the end of this month.  (Notice of Removal, Ex. L at 19-20; FAC ¶¶ 117-19)  Justice Kapnick denied WHBM's request for a TRO but granted the request for expedited discovery and scheduled a hearing on Plaintiffs' application for a preliminary injunction.  (Notice of Removal, Ex. M)  The parties stipulated that the hearing would be held on July 30, 2010.  (Notice of Removal, Ex. N)

Defendants removed the action to this Court on July 9, 2010.  (Notice of Removal)  On July 14, 2010, Plaintiffs filed an Amended Complaint.  (Dkt. No. 16)  On July 16, 2010, Plaintiffs moved by order to show cause to remand this action to state court.  (Dkt. No. 12)  In so moving, Plaintiffs again requested expedited relief in light of the impending delivery of Cache's Fall 2010 line to Cache stores.  (Pltf. Br. 12-13)  This Court heard oral argument on Plaintiffs' motion on July 22, 2010.

## DISCUSSION

"Under 28 U.S.C. § 1441, a civil action filed in state court may be removed by the defendant to federal district court if the district court has original subject matter jurisdiction over the plaintiff's claim."  Lupo v. Human Affairs Int'l, 28 F.3d 269, 271 (2d Cir. 1994).  "If at any

4

time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447.

"On a motion to remand, the party seeking removal bears the burden of establishing to a 'reasonable probability' that removal is proper." Anwar v. Fairfield Greenwich Ltd., 676 F. Supp. 2d 285, 292 (S.D.N.Y. 2009). "Any doubts regarding the propriety of removal are resolved in favor of remand, and 'federal courts construe the removal statute narrowly.'" Id. (quoting Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994)).

"Where the removal is based upon federal question jurisdiction, the 'well-pleaded complaint rule'" governs. That is, a federal question must appear on the face of the plaintiff's properly pled complaint. This rule enables the plaintiff to be the 'master of the claim' and permits plaintiff to avoid federal jurisdiction by exclusively relying on state law." Panizza v. Mattel, Inc., No. 02 Civ. 7722 (GBD), 2003 WL 22251317, at *2 (S.D.N.Y. Sept. 30, 2003) (citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987); Hernandez v. Conriv Realty Assoc., 116 F.3d 35, 38 (2d Cir.1997)).

However, "a plaintiff may not defeat removal by clothing a federal claim in state garb, or, as it is said, by use of 'artful pleading.'" Travelers Indemnity Co. v. Sarkisian, 794 F.2d 754, 758 (2d Cir.1986). "The classic application of the artful pleading doctrine occurs in the context of federal preemption of state law." Sarkisian, 754 F.2d at 758. "Under the complete preemption doctrine, a federal statute's preemptive force is so extraordinary that it converts an ordinary state common law claim into a federal claim for purposes of the well-pleaded complaint rule." Panizza, 2003 WL 22251317, at *2 (citing Caterpillar, Inc., 482 U.S. at 393 (quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987)))

Here, Cache contends that Plaintiffs' claim for misappropriation of trade secrets is preempted by the Copyright Act because it is based in part on Cache's alleged misappropriation of clothing designs and fabric designs. (Cache Br. 11-25)[1]

"District courts have exclusive jurisdiction over any civil action arising under any Act of Congress relating to copyrights." Panizza, 2003 WL 22251317, at *2 (citing 28 U.S.C. § 1338(a); 17 U.S.C. § 301(a)). "The Copyright Act exclusively governs a claim when: (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004) (citing 17 U.S.C. § 301(a)).

The second prong of this test is called the "general scope requirement." Briarpatch Ltd., L.P., 373 F.3d at 305. In order to meet this requirement and be preempted, "the state law claim must involve acts of reproduction, adaptation, performance, distribution or display . . . [and] must not include any extra elements that make it qualitatively different from a copyright infringement claim." Id. (citations omitted). "To determine whether a claim is qualitatively different, [courts] look at 'what [the] plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced.'" Id. at 306 (citing Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 716 (2d Cir. 1992)).

Plaintiffs argue, inter alia, that their claim for misappropriation of trade secrets is not preempted by the Copyright Act because it requires proof of an "extra element[] that make[s] it qualitatively different from a copyright infringement claim." See Briarpatch Ltd., L.P., 373

---

[1] Defendants Farhang and Board join in Cache's opposition to Plaintiffs' motion to remand. (Dkt. No. 19)

F.3d at 305.  Specifically, "[t]o succeed on a claim for trade secret misappropriation under New York law, a plaintiff must establish '(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means.'"  Linkco, Inc. v. Fujitsu Ltd., 230 F. Supp. 2d 492, 497-98 (S.D.N.Y. 2002) (quoting North Atlantic Instruments, Inc. v. Haber, 188 F.3d 38, 43-44 (2d Cir. 1999)).  The Amended Complaint pleads that Farhang and Board disclosed WHBM's confidential information in breach of written confidentiality agreements and fiduciary duties they owed to WHBM as former employees.  (FAC ¶¶ 58-62, 120-32, 145)  The Amended Complaint additionally pleads that Cache aided and abetted this misappropriation.  (FAC ¶¶ 144-47)

The Second Circuit has made clear that "a state law claim is qualitatively different [from a copyright infringement claim] if it requires such elements as breach of fiduciary duty." Briarpatch Ltd., L.P., 373 F.3d at 306.  "Trade secret claims often are grounded upon a defendant's breach of a duty of trust or confidence to the plaintiff through improper disclosure of confidential material.  The defendant's breach of duty is the gravamen of such trade secret claims, and supplies the 'extra element' that qualitatively distinguishes such trade secret causes of action from claims for copyright infringement that are based solely upon copying."  Computer Assocs. Int'l, 982 F.2d at 717; see also Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 852 n. 6 (2d Cir. 1997) (noting that state law trade secret claims "are generally not preempted because they pass the 'extra elements' test").  Here, Plaintiffs' trade secrets claim is grounded upon Farhang and Board's alleged breach of fiduciary duty, an extra element which differentiates the claim at issue from one for copyright infringement.

In response to Plaintiffs' argument that their trade secrets claim requires proof of an additional element and thus is qualitatively different from an infringement claim, Defendants

argue that Plaintiffs' trade secret claim fails as a matter of law. (Cache Br. 19-24) Defendants contend that clothing designs cannot be trade secrets, and thus the misappropriation of clothing designs cannot be the basis for a valid trade secrets claim.

Defendants cite no legal authority suggesting that this Court is required to consider the merits of Plaintiffs' state law claim in resolving a motion to remand, however, nor do they explain why Plaintiffs' alleged failure to state a claim dictates that their claim is preempted. Indeed, Defendants' argument that Plaintiffs have failed to state a claim for misappropriation of trade secrets is better suited to a motion to dismiss, and they may make such an argument in front of Justice Kapnick when the case is remanded. At this stage, however, Defendants have failed to carry their burden to demonstrate that removal of this case was appropriate.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion to remand is GRANTED. The Clerk of the Court is directed to close this case and return this matter to the Clerk of the Supreme Court for the State of New York, New York County.

Dated: New York, New York
       July 26, 2010

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge